2024 IL App (2d) 230110-U
No. 2-23-0110
Order filed December 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ASA CONSTRUCTION & CONSULTING, INC., | ) ) | Appeal from the Circuit Court of Kendall County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CH-232 |
| | ) | |
| MARK OLIVER, | ) | Honorable |
| | ) | Jody Patton Gleason, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order vacating default judgment and dismissal for want of prosecution was not error as plaintiffs demonstrated the existence of meritorious defenses and due diligence in presenting those defenses and filing their petition for relief. The trial court did not abuse its discretion in awarding damages and pre-judgment interest to plaintiffs. The trial court did not err in barring certain lay testimony when it veered into territory requiring an expert. The trial court's award of plaintiffs' unjust enrichment claim was not an abuse of discretion as the Mechanics Lien Act (the Act) (770 ILCS 60/17(b)) did not provide an adequate remedy for work performed outside the scope of the parties' contract. The trial court did not abuse its discretion in awarding plaintiffs' attorney's fees pursuant to the Act.

¶ 2    Defendant, Mark Oliver (Oliver), appeals from the trial court's March 2, 2023, order denying his motion to reconsider (1) the calculation of damage award against him, including pre-judgment interest; (2) the exclusion of certain witness testimony; (3) the award of plaintiff, ASA Construction & Consulting, Inc.'s (ASA) unjust enrichment claim; and (4) the assessment of attorney's fees against defendant. Additionally, Oliver appeals from the trial court's August 4, 2021, order granting plaintiff's petition to vacate default judgment and dismissal for want of prosecution pursuant to section 2-1401 of the Illinois Code of the Civil Procedure (Code). 735 ILCS 5/2-1401 (West 2022). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On August 12, 2019, ASA filed a four-count complaint against Oliver. Count I for breach of contract alleged that on September 26, 2017, ASA entered a contract with Oliver to perform construction and consulting services as a general contractor following fire damage sustained at Oliver's property. The total cost of the initial contract was $300,306.80, paid for by Oliver's insurer, State Farm. During the construction project, Oliver requested certain changes and upgrades not contemplated in the original scope of work paid for by his insurer. ASA completed all work required under the contract, as well as Oliver's requested changes and upgrades, on March 19, 2019. The total value of the work performed by ASA pursuant to the contract and the agreed upon extra work was $338,167.00, $105,143.00 of which remained allegedly unpaid.

¶ 5    Count II for foreclosure of mechanic's lien alleged that ASA filed a contractor's notice and claim for lien on April 5, 2019, with the Kendall County Recorder of Deeds Office. The notice and claim for lien was served upon Oliver on April 5, 2019, but he refused to pay any amount without just cause or right.

¶ 6    Count III for *quantum meruit* and Count IV for unjust enrichment alleged the facts articulated above and claimed that Oliver has benefited from ASA's improvements to his property without compensation in the amount of $105,143.00.

¶ 7    On October 31, 2019, Oliver filed a counterclaim and third-party claim against ASA and its owner, Andrae Holliday (collectively "plaintiffs"). Count I for breach of contract against ASA and alleged that ASA failed to perform its obligations under the contract, damaging Oliver in the amount of $75,000. Count II for fraudulent lien against ASA alleged that the contractor's notice and claim for lien filed on April 5, 2019, with the Kendall County Recorder of Deeds Office was filed with the intent to defraud. Count III for fraud alleged that ASA and Holliday made certain false statements and representations regarding payment of subcontractors and procurement of fixtures. Oliver claimed damages in the amount of $75,000.00.

¶ 8    On January 15, 2020, plaintiffs' counsel moved filed a motion withdraw. On February 13, 2020, the trial court granted the motion and plaintiffs were given 21 days to retain new counsel. On March 10, 2020, plaintiffs' new counsel filed its substitute appearance. On March 11, 2020, the trial court allowed plaintiffs 28 days to answer or otherwise plead. However, on April 7, 2020, the trial court struck the scheduled status date due to "Activation of the Emergency Preparedness Plans for the Courts in Kendall and De Kalb Counties in Response to the COVID-19 Pandemic pursuant to General Order 20-03." On April 9, 2020, plaintiffs filed a motion to extend the time to file their responsive pleadings due to difficulties presented by the COVID-19 pandemic. On April 14, 2020, plaintiffs filed their answers to Oliver's counterclaim.

¶ 9    On September 3, 2020, plaintiffs' new counsel filed a motion to withdraw. Notice was sent to plaintiffs' last known address at 501 Simsbury Court, Oswego. On October 22, 2020, the trial court granted the motion to withdraw. Plaintiffs were not present. Plaintiffs' former counsel was

ordered to send a copy of the withdrawal order in accordance with Supreme Court Rule 13(c)(4). The matter was continued until December 3, 2020, wherein plaintiffs again failed to appear. The record is silent as to whether plaintiffs' former counsel adhered to the trial court's order to comply with Supreme Court Rule 13(c)(4).

¶ 10    On December 10, 2020, Oliver filed a motion for dismissal of ASA's August 12, 2019, complaint for want of prosecution. The motion also sought entry of default judgment on Oliver's October 31, 2019, complaint. Notice of the motion was sent to plaintiffs at 501 Simsbury Ct., Oswego.

¶ 11    On December 17, 2020, plaintiffs again failed to appear before the trial court and a default judgment was granted against them in the amount of $131,285.77. The trial court also granted Oliver's motion for dismissal for want of prosecution.

¶ 12    On January 19, 2021, Oliver issued citations to discover assets to JP Morgan Chase and Members Choice Credit Union. Notice of the citations was sent to plaintiffs at 501 Simsbury Court, Oswego. On March 11, 2021, Oliver personally served Holliday with an additional citation notice at 501 Simsbury Court, Oswego. On March 17, 2021, Holliday entered a *pro se* appearance before the trial court to address the citations. The trial court continued the matter.

¶ 13    Plaintiffs again obtained new counsel and entered an appearance on April 28, 2021. On May 11, 2021, plaintiffs filed a petition to vacate default judgment and dismissal for want of prosecution pursuant to section 2-1401 of the Code. The petition alleged that (1) the October 22, 2020, order granting leave to withdraw as counsel was not sent to plaintiffs as required by Supreme Court Rule 13(c)(4); (2) the December 17, 2020, judgment order granting Oliver's motion for default judgment and dismissal for want of prosecution was not sent to plaintiffs as required by section 2-1302(a) of the Code; (3) Oliver waited more than 30 days after the entry of default

judgment before issuing supplementary proceedings; and (4) the notice of citations to discover assets was not sent to plaintiffs as required by section 2-1402(b) of the Code.

¶ 14    Plaintiffs' petition asserted defenses to each of the claims in Oliver's counterclaim, argued that they diligently presented their defenses in the original action, and were diligent in presenting their petition to vacate default judgment and dismissal for want of prosecution pursuant to section 2-1401 of the Code. Holliday testified in an attached affidavit that Oliver accompanied him to a store when he purchased the master bathroom tub, master shower glass door, and bonus room casement windows. Holliday averred that defendant approved the purchase of those materials. He testified that the delay in completing the contracted work was due to "multiple and extensive change orders submitted by Mr. Oliver" and "Mr. Oliver's refusal to remove large amounts of personal property from the family room and garage." Oliver also "began to drastically change the scope of work beyond what was approved by the insurance adjuster." Holliday testified that Oliver "added a complete remodel to his basement, a new built-in shower in the master bathroom, a new custom closet, a prayer room in his attic, and a new brick and stone façade to the exterior of the house, among other changes." Oliver refused "to remove substantial amounts of personal property from the residence at the beginning of the project because the portion of the insurance claim related to the contents of the house was still pending."

¶ 15    Responding to Oliver's counterclaim's allegation that Holliday would pay Oliver's living expenses during the pendency of the project, Holliday testified that he "never informed Mr. Oliver that [ASA] would pay his hotel fees. There was no need for Mr. Oliver to incur any hotel fees as he was living with his mother while his house was under construction." Oliver informed Holliday that he and his wife separated, and she obtained her own apartment after moving out of Oliver's mother's house. The apartment lease was in no way related to the construction at Oliver's property.

¶ 16     Holliday testified that Oliver "began hiring his friends and acquaintances to perform work on the project, even though I had already contracted with my preferred vendors." Oliver's claims that ASA failed to pay subcontractors were false because ASA "paid each of its subcontractors in full. If any subcontractors were not paid, they were presumably friends and acquaintances hired by Mr. Oliver outside the scope of his insurance claim."

¶ 17     Finally, Holliday testified that on March 11, 2021, he was served with a citation to discover assets that had been issued on February 22, 2021. This was the first time that Holliday learned that there was a judgement against him. Holliday worked in four different states and traveled for work extensively between September 2020 and January 2021.

¶ 18     On June 8, 2021, plaintiffs filed a motion to stay enforcement of judgment pursuant to section 2-1305 of the Code. Over Oliver's objection, the trial court granted the motion, in part, until ruling on plaintiffs' petition to vacate default judgment.

¶ 19     On August 4, 2021, the trial court held a hearing on plaintiffs' petition to vacate default judgment and dismissal for want of prosecution pursuant to section 2-1401 of the Code. In ruling in favor of plaintiffs, the trial court found as follows:

> "Okay. As we all know, the court has to consider whether the movant has shown by a preponderance of the evidence not only the existence of a meritorious claim or a defense in the original action, but due diligence in pursuing the claim or defense and due diligence in presenting the 2-1401.
>
> I'll address the third one first. I think that he did exercise due diligence in presenting the 2-1401 petition.
>
> Clearly, the judgment, there's the notice of the default was not sent to him. Once the citation became known, he attempted to file one on his own. And we all understand that

corporations have to be represented, have to be represented by counsel, but he attempted to do something to get this back before the court to address the issue of the dismissal of the case and the judgment against him.

The second one that I'm going to address is the first one, whether the movant can show by preponderance of the evidence, the existence of a meritorious claim.

I have to look at whether he's pled or alleged facts establishing the right to have the judgment vacated based upon the matters upon which it's predicated.

I don't determine the merits of whether his facts, as he alleges in his affidavit as he signed, well, the affidavits, but the facts as he alleges are true and correct.

So based upon that standard, I do find that the movant has shown by a preponderance of the evidence the existence of a meritorious claim or defense in pursuing it.

And had I not received these documents from Let's Pave showing that [Holliday] was out of state, whether he was a contractor or subcontractor, and I understand, everybody has an obligation to follow their case, but 2-1401 is to be applied liberally. Those instructions are given to us by case law, by statute, and, believe it or not, by education classes that judges have to take, we are instructed that 2-1401 is a, you take a liberal application of that statute.

So based upon those, I will grant the 2-1401 petitions, and I will ask that you instruct ASA Construction and Mr. Holliday that I hope he diligently follows through with this, because if we have one more no show, one more failing to appear, failing to show up for cases, court dates, that the court will not look upon that lightly."

¶ 20    Plaintiffs' complaint and Oliver's counterclaim proceeded to a bench trial. Prior to trial, plaintiffs filed a motion *in limine* to bar Oliver from calling Jim Brudnicki, an HVAC manager for RJ Kuhn Plumbing, Heating, and Cooling, to testify as an expert witness. The trial court allowed Brudnicki to testify as a lay witness, but not as an expert because he was not disclosed as such, nor was he part of the building process at Oliver's property.

¶ 21    Following a bench trial, the trial court made these findings. The trial court found that after Oliver's home was damaged by fire in 2017, he entered into an agreement with State Farm to repair his home for $300,306.08. Oliver then entered into a contract with plaintiffs whereby Holliday would complete the work authorized by State Farm for $300,306.08. Holliday would receive $25,437.50 in compensation and $25,437.50 for overhead expenses from the contract. After signing the contract, Oliver requested Holliday to perform work outside of the State Farm authorization. Oliver wanted Holliday to finish his basement, which Holliday agreed to do for approximately $17,000. The trial court found that this work was not covered in the written contract, but the parties did enter into an oral contract for that work to be done by plaintiffs, paid with funds from State Farm. However, Oliver requested additional work to be done outside of the contract, including extra brick work, bathroom upgrades, new closet systems, wood flooring, and a build out of the fireplace. Plaintiffs completed all of the additional work requested but the parties did not enter into a written contract for any of these additions, nor did they come to an agreement regarding payment for that work.

¶ 22    State Farm agreed to pay for Oliver's housing until the summer of 2018, but no evidence was introduced to show why it only agreed to pay until that time. After it became apparent that the additional work would exceed the amount allowed by State Farm, communication between the parties began to break down. Oliver received a check in 2018 from his mortgage loan servicer, Mr.

Cooper, for $75,000 which he used to pay some of the contractors and $30,000 to Holliday. The parties never entered a contract regarding Oliver's housing, utilities, or storage costs.

¶ 23　The trial court found that plaintiffs' expenses were $116,655.19 in pay outs to subcontractors, $50,875.00 in money owed under the contract, and $25,816.32 for materials, for a total of $193,346.51. Holliday received $158,088.13 from State Farm and Oliver. $35,258.28 remained owed by Oliver. Additionally, subcontractor Alpha Plumbing was still owed $5,300.00, which was to be added to the money owed to plaintiffs.

¶ 24　The trial court found that Oliver provided no evidence that any damage or deficiencies were the result of plaintiffs' work, nor did he offer any evidence of a damage amount. Oliver admitted that all the items on the punch list were completed prior to his occupancy of the property.

¶ 25　The trial court found in favor of plaintiffs as to its (1) breach of contract claim and ordered Oliver to pay $35,258.38; (2) claim under the Act for $35,258.38, plus interest since March 19, 2019, and granted judgment of foreclosure; and (3) unjust enrichment claim and ordered Oliver to pay $5,300.00 for the amount still owed to Alpha Plumbing. The trial court denied plaintiffs' *quantum meruit* claim. All three of the counts in Oliver's counterclaim were denied.

¶ 26　Plaintiffs filed a petition for attorney's fees pursuant to section 17(b) of the Act. See 770 ILCS 60/17(b). Oliver's response to the petition asserted that he had withheld payment to plaintiffs for just cause. The trial court ultimately granted the petition and awarded plaintiffs $28,516.29 in fees and costs, finding that Oliver failed to establish at trial as to why he should not have paid what was owed.

¶ 27　Oliver filed a motion to reconsider alleging that the trial court erred in its rulings related to the calculation of damages, pre-judgment interest, and plaintiffs' unjust enrichment claim. Regarding the calculation of damages, the trial court stated as follows:

"I went over these several times before I made the decision. And what I looked at was not only the demonstrative exhibit that was presented, but I also looked at *** all the checks that were presented that ASA Construction had written, and these were from their bank account.

So, I went through all of the checks, took out all of the checks that ASA Construction had written for this particular project, because several checks included in that were not for this project, they were for other projects. And that's how I came up with the amount.

So, I don't believe that I erred in my calculation of the amounts paid by Mr. Holliday.

***

What Oliver basically did in this is that when, I know there was one agreement that Mr. Holliday agreed to give him the money, and then he started paying people that he had brought on, and for work that was totally outside the contract. That State Farm was never, State Farm through Mr. Cooper, that they were agreeing to pay, there were items in there that clearly were not included, had never intended to be included, and Mr. Oliver was using the money received to make those payments.

And that was quite clear from all of the testimony that I received, and I don't believe it was error when I made that ruling.

Now, I don't believe it was error at all when I made the finding that ASA was not responsible for paying utilities and storage costs. There was absolutely nothing in the contract that talked about utilities and storage costs.

There was nothing in the contract for payments from Mr. Cooper, other than the overhead. And I think that the respondent was trying to make the argument that those were overhead. I didn't find that to be overhead. There was never any agreement that they were going to pay for utilities, obviously, and storage costs. So I don't believe I erred when I made that finding.

And I don't believe [I erred] when I made the finding that ASA was entitled to the full amount of the contract and overhead and profit.

When I went through all of the monies that were paid and tried to determine how much was actually owed, I took into consideration that [plaintiffs] were owed both the overhead and the profit. And then I went through all of the payments that they received, and, honestly, they had not received enough money to pay for everything that they had paid for and to include the overhead and profit."

Regarding pre-judgment interest, the trial court stated as follows:

"Mr. Oliver intentionally withheld money from Mr. Holliday and did not pay the money owed. Not only do we have the money that, the one heck that they agreed that he would put in his account, meaning that Holliday and Oliver agreed that they would put that check in the account, Mr. Oliver received a check from State Farm after that for this work.

Mr. Holliday was never notified of that. He intentionally put that into his account, obviously, so that Mr. Holliday would not have access to any of that. That was after the litigation actually *** had been filed. And I think he wrongfully withheld money.

***

Unfortunately, [plaintiffs], when they put on their case, they were probably owed a lot more money that I gave them, but, unfortunately, they didn't present evidence for

money that they paid for painters and for other people. They only presented the evidence that they did, and so that's why I found that he was only entitled to the amount that I found.

However, I knew there were a lot more people that, obviously, were involved in the project from the evidence that was presented, and what was paid to those people was never presented to me.

So, I do believe that [Oliver] willfully withheld payment that was owed to Mr. Holliday, and I believe my ruling as to pre-judgment interest is correct."

Regarding plaintiffs' unjust enrichment claim, the trial court stated as follows:

"There was testimony by Alpha Plumbing that they actually did some of the work under the contract, and they actually [did] *** around $12,000 of free work when they were finishing the bathrooms, I think both in the basement and upstairs.

So, I do believe that my finding regarding unjust enrichment was correct as to the $5,300 that was owed by Alpha Plumbing."

¶ 28    Oliver timely filed the present appeal.

¶ 29                                    II. ANALYSIS

¶ 30    We begin our analysis with Oliver's contention that the trial court erred by vacating the December 17, 2020, order for default judgment against plaintiffs. Oliver argues that plaintiffs' petition to vacate pursuant to section 2-1401 of the Code failed to assert meritorious claims or defenses and failed to demonstrate due diligence in presenting their claims.

¶ 31    Section 2-1401 of the Code provides a comprehensive statutory mechanism for obtaining relief from final judgments or orders that are older than 30 days. See 735 ILCS 5/2-1401 (West 2022). The purpose of a section 2-1401 petition is to provide a statutory method to bring before the court facts not appearing in the record that, if known at the time of the entry of the judgment,

would have prevented its rendition. *In re Marriage of Brubaker*, 2022 IL App. (2d) 200160, ¶ 19. Courts apply section 2-1401 with the aim of achieving justice, but a proceeding under this provision is not intended to give a litigant a new opportunity to do that which should have been done in an earlier proceeding. *Id.*

¶ 32    A petition filed under section 2-1401 may present "either a factual or legal challenge to a final judgment or order." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Where the petition raises a factual challenge to a judgment, as is the case here, the petitioner must, in order to be entitled to relief, affirmatively plead specific factual allegations to support each of the following three elements: (1) the existence of a meritorious defense or claim, (2) due diligence in presenting that claim in the original action, and (3) due diligence in seeking relief under section 2-1401. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). If a section 2-1401 petition raises a factual challenge to a final judgment, which requires a consideration of the equities underlying the case, then the trial court's ruling should be reviewed for an abuse of discretion. *Warren County Soil*, 2015 IL 117783, ¶ 50.

¶ 33    Oliver's counterclaim contained counts for breach of contract, fraudulent lien, and fraud. A petitioner under a section 2-1401 petition to vacate need only assert sufficient facts, which, if believed by the trier of fact, would defeat the claims. *Pirman v. A&M Cartage*, 285 Ill. App. 3d 993, 1000 (1996). The record indicates that plaintiffs did present numerous meritorious defenses to each count contained in Oliver's counterclaim through their petition to vacate default judgment pursuant to section 2-1401 of the Code. See *supra* ¶¶ 14-17.

¶ 34    The record further supports the trial court's ruling that plaintiffs exercised due diligence in presenting their meritorious defenses in the original action. Oliver filed his counterclaim on December 12, 2019. As detailed above (*supra* ¶ 8), plaintiffs obtained new counsel following the

withdrawal of their original counsel and were ordered to file responsive pleadings to Oliver's counterclaim by April 8, 2020. However, the trial court's April 7, 2020, order striking the then-scheduled April 29, 2020, status date due to the COVID-19 pandemic, continued the matter until May 14, 2020. Plaintiffs filed a motion to extend the time to file responsive pleading on April 9, 2020. Without receiving a ruling on the motion, plaintiffs filed their answers to Oliver's counterclaim on April 14, 2020. Under the difficult circumstances presented by the COVID-19 pandemic, coupled with the difficulties presented to plaintiffs via the withdrawal of their original counsel, we cannot agree with Oliver that they failed to exhibit due diligence in presenting their defenses to his counterclaim in the original action.

¶ 35    Likewise, the record does not support Oliver's argument that plaintiffs failed to exercise due diligence in presenting their petition to vacate default judgment. The trial court granted plaintiffs' second counsel leave to withdraw on October 22, 2022. Pursuant to Rule 13(c)(4), the order was required to be served upon plaintiff as they were not present at the time the motion was granted. See IL. S. Ct. R. 13(c)(4) (eff. July 1, 2017). The record does not indicate that any such service was effectuated. Following the entry of default judgment on December 17, 2020, there is no indication in the record that the judgment order was served on plaintiff as required by section 1302(a) of the Code. See 725 ILCS 5/2-1302(a) (West 2022).

¶ 36    What is clear from the record is that Oliver waited until January 19, 2021, to issue two third-party citations to discover assets, however the record does not indicate that the citation notices were sent to plaintiffs as required by section 1402(b) of the Code. See 725 ILCS 5/2-1402(b) (West 2022). Holliday was personally served with a citation to discover assets on March 11, 2021, which was the first time he realized that a default judgment had been entered against

him. The citation was issued on February 22, 2021. Holliday then filed a *pro se* motion to dismiss on April 12, 2021.

¶ 37 The timing alone of Oliver's issuance of the citations to discover assets supports the trial court's ruling that plaintiffs exercised due diligence in filing their petition to vacate default judgment. A delay in execution of more than 30 days after the rendition of a default judgment casts a cloud upon the proceedings and is a fact to be considered in determining due diligence. *Leavens, Armiros & Ross, Ltd. v. English*, 203 Ill. App. 3d 16, 21 (1990). Additionally, Oliver's service of third-party citations without serving notice of the citations to plaintiffs as required by section 1402(b)of the Code supports the granting of the petition to vacate default judgment. Failure to notify plaintiffs of the entry of default judgment coupled with failure to serve plaintiffs with notice of supplementary proceedings as required by statute, and curiously waiting just beyond 30 days to issue the citations to discover assets all support the notion that the trial court did not abuse its discretion in finding that plaintiffs exercised due diligence in filing their petition to vacate default judgment. Based on the foregoing, the trial court's grant of that portion of the petition was not error.

¶ 38 Oliver argues that the trial court erred in vacating the dismissal for want of prosecution under the same standard as his arguments concerning section 2-1401 above. A dismissal for want of prosecution is an interlocutory order for the year after the court enters it. *Federal Nat. Mortgage Ass'n v. Tomei*, 2014 IL App (2d) 130652, ¶ 8. A dismissal for want of prosecution, by virtue of its nonfinal status, is subject to vacatur under section 2–1301(e) of the Code. Section 2–1301(e) of the Code provides that "[t]he court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or

judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2–1301(e) (West 2022).

¶ 39    Here, plaintiffs' petition to vacate default judgment and dismissal for want of prosecution was filed pursuant to section 2-1401 of the Code rather than section 2-1301(e). However, the substance of plaintiffs' request, insofar as the pleadings related to dismissal for want of prosecution, effectively sought relief under section 1301(e). The character of the pleading should be determined from its content, not its label. *In re Haley D.*, 2011 IL 110886, ¶ 67. Accordingly, when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called. *Id*. Based on the procedural history articulated by the trial court in the underlying case, it was well within its discretion to grant plaintiffs' request to vacate dismissal for want of prosecution. We will not disturb that ruling.

¶ 40    We next consider Oliver's contention that the trial court erred in denying his motion to reconsider regarding the exclusion of witness testimony by Jim Brudnicki. Oliver argues that Brudnicki should have been allowed to testify to his observations of the ventilation system at the property as he was not giving an expert opinion. Specifically, Oliver takes issue with the trial court sustaining plaintiffs' objection to Brudnicki's observations and opinions regarding the ventilation system in the basement of the property when it ruled that "I think he said there was something wrong with [the ventilation system] and I'm not going to allow him to go into what was wrong with the system because that's what you needed an expert for."

¶ 41    The decision to grant or deny a motion for reconsideration is within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. *Chelkova v. Southland Corp.,* 331 Ill. App. 3d 716 (2002). In determining whether the trial court abused its discretion, "the question is not whether the reviewing court agrees with the trial court, but whether the trial

court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *In re Marriage of Aud,* 142 Ill. App. 3d 320, 326 (1986).

¶ 42 To address this issue, we look to the Illinois Rules of Evidence. Rule 701 governs opinion testimony by lay witnesses and states as follows:

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." IL. R. Evid. 701 (eff. January 1, 2011).

¶ 43 We cannot agree with Oliver that the trial court abused its discretion in denying his motion to reconsider this issue. Brudnicki was testifying as a lay witness and was allowed to give his observations, to a point, about the ventilation system. However, when his testimony began to veer into territory concerning technical problems with that system, it became clear that such testimony would involve certain scientific, technical, or specialized knowledge. Thus, the trial court's decision to sustain plaintiffs' objection to that testimony was supported by Rule 701 and within its discretion.

¶ 44 Oliver next contends that the trial court erred in denying his motion to reconsider regarding an alleged miscalculation of the damage award, including pre-judgment interest. Although Oliver's notice of appeal lists the orders November 21, 2022 (the date of trial court's ruling after bench trial) and February 27, 2023 (the date of the trial court's denial of his motion to reconsider), his

brief limits his arguments related to the issues of damages and pre-judgment interest to whether the trial court erred in denying his motion to reconsider those issues.

¶ 45    Oliver's motion to reconsider challenged the trial court's February 27, 2023, order under section 2-1203(a) of the Code, which permits a party to seek to modify a judgment in a nonjury case. See 735 ILCS 5/2-1203(a) (West 2022). The purpose of such a motion " 'is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand.' " *In re Marriage of Heinrich*, 2014 IL App (2d) 121333, ¶ 55 (quoting *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009)). "Generally, a trial court's decision to grant or deny a motion to reconsider will not be reversed absent an abuse of discretion." *Id.*

¶ 46    In a motion to reconsider, newly discovered evidence is evidence that was unavailable prior to the hearing in which the judgment was entered. *Landeros v. Equity Property and Development*, 321 Ill. App. 3d 57, 651 (2001). Here, defendant's motion to reconsider did not present any newly discovered evidence that was unavailable at trial. The motion's argument did not relate to any changes to existing law. The motion's argument did not relate to any alleged error with the trial court's application of any existing law. What Oliver argues before this court is that the trial court's alleged mathematical errors were "a misapplication of the preponderance of the evidence standard." This is misleading. The trial court could not misapply the preponderance of the evidence standard when ruling on Oliver's motion to reconsider because Oliver did not present any newly discovered evidence, changes in existing law, or misapplication of existing law. Even if we were to agree with Oliver's mathematical recalculations of the trial court's findings, we could not hold that the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice

resulted." *In re Marriage of Aud,* 142 Ill. App. 3d 320, 326 (1986). Therefore, we will not disturb the trial court's denial of Oliver's motion to reconsider the damage award and pre-judgment interest.

¶ 47    Oliver next contends that the trial court erred in denying his motion to reconsider plaintiffs' unjust enrichment claim related to the $5,300.00 owed due to work performed by Alpha Plumbing. Oliver argues that the trial court should not have considered unjust enrichment in its judgment because plaintiffs had an adequate remedy at law in the Act. As stated above, we review the trial court's judgment on this issue for an abuse of discretion.

¶ 48    A mechanics' lien is the product of an express or implied contract. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 488 (1999). In the absence of a valid contract, the lien is unenforceable. *Id*. Here, the trial court found that the benefits Oliver received from the work performed by Alpha Plumbing were "outside the scope of the contract." The record shows that plaintiffs had the obligation to compensate Alpha Plumbing for the work performed. Additionally, the trial court found that Alpha Plumbing performed work well in excess of the $5,300.00 claimed by plaintiffs based on the evidence presented at trial. In any event, the trial court's decision to award $5,300.00 to plaintiffs for the amount owed to Alpha Plumbing for unjust enrichment was not an abuse of discretion. The work performed outside of the contract would be unenforceable under the Act, leaving plaintiffs without an adequate remedy under the law.

¶ 49    Finally, Oliver contends that the trial court erred in assessing attorney's fees against him. He argues that he had the right to withhold payment for just cause after plaintiffs filed an excessive lien and failed to diligently prosecute their case.

¶ 50    To resolve this issue, we look to section 17 of the Act. Section 17(b) of the Act states as follows:

"(b) If the court specifically finds that the owner who contracted to have the improvements made failed to pay any lien claimant the full contract price, including extras, without just cause or right, the court may tax that owner, but not any other party, the reasonable attorney's fees of the lien claimant who had perfected and proven his or her claim." 770 ILCS 60/17(b) (West 2022).

Section 17(b) of the Act "does not require that the owner fail to pay the full lien claim without cause, just the full contract price and those extras included in the contract." *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 57. "The fact that defendant may have had just cause or right not to pay the unapproved extras portion of the lien claim does not preclude plaintiffs' right to receive attorney fees for failure to pay the full contract price." *Id*. Further, Section 17(d) of the Act states that "without just cause or right *** means a claim asserted by a lien claimant or a defense asserted by the owner who contracted to have the improvements made, which is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 60/17(d) (West 2022).

¶ 51    The trial court's February 27, 2023, order granting plaintiffs' petition for attorney's fees found that Oliver "failed to establish any reason why [he] should not have paid ASA Construction the amount owed." It found Oliver's claims to be "not well grounded in fact." Oliver argues to this court that he withheld payment for just cause because plaintiffs' lien waivers were inaccurate and they were only awarded a fraction of the amount sought in the recorded mechanics' lien. However, that assertion, even if accurate, does not justify Oliver's argument that he had just cause in his failure to pay the full contract price for plaintiffs' work. The trial court's ruling that his argument is not well grounded in fact or warranted by existing law remains supported by the evidence. Based

on the underlying facts and the language of the Act, the trial court's award of attorney's fees to plaintiffs was not an abuse of discretion.

¶ 52                                III. CONCLUSION

¶ 53     For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 54     Affirmed.